Cite as 2020 Ark. App. 321

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CR-20-8

| | |
|---|---|
| | Opinion Delivered: May 27, 2020 |
| DAMONT EWELLS <br> APPELLANT | APPEAL FROM THE LINCOLN COUNTY CIRCUIT COURT [NO. 40CR-17-114] |
| V. | |
| | HONORABLE JODI RAINES DENNIS, JUDGE |
| STATE OF ARKANSAS <br> APPELLEE | AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Damont Ewells appeals after he was convicted by a Lincoln County Circuit Court jury of manslaughter and was sentenced as a habitual offender to serve a total of 240 months' imprisonment. On appeal, appellant contends that the trial court erred in denying his motion for directed verdict because the evidence was insufficient to support his conviction. We affirm.

### I. *Relevant Facts*

Appellant was charged with manslaughter for recklessly causing the death of James Walker in violation of Arkansas Code Annotated section 5-10-104 (Repl. 2013) and as a habitual offender under Arkansas Code Annotated section 5-4-501. A jury trial was held on August 27, 2019, and the following evidence was presented.

Both appellant and Mr. Walker were inmates and were housed in the same barracks at the Arkansas Department of Correction Cummins Unit. On September 19, 2017,

appellant and Mr. Walker were involved in a verbal argument in the bathroom area of the barracks. Two other inmate witnesses, Fred Warren and Alan Tyson, testified that they saw appellant throw a single punch, which hit Mr. Walker in the jaw, "knocked" him out, and caused him to fall backward and hit the back of his head on the floor. The witnesses further testified that after appellant punched Mr. Walker, appellant immediately left the area and did not attempt to aid Mr. Walker, who was left lying on the floor with blood pooling around his head.

Sergeant Brandon Baker, a ten-year employee of the Cummins Unit, testified that he was working when the incident occurred and that he responded to the crime scene moments after it happened. He saw Mr. Walker laid out on the floor in a pool of blood that was coming from the back of his head. Mr. Walker was faintly moving at the time. Sergeant Baker called for medical assistance.

Trooper Billy McCradic, an investigator for the Arkansas State Police, testified that he arrived at the crime scene after Mr. Walker's body had already been removed and the area cleaned. He explained that Mr. Walker was alive when he was removed. Mr. Walker was transported to UAMS where it was determined that he was brain dead. According to Trooper McCradic, life support was subsequently removed the next day. Trooper McCradic explained that there was no camera footage because the incident took place in the shower area of the barracks. However, through interviews and statements, he ascertained that Mr. Walker had been struck in the face and fell back into the shower, striking the back of his head.

Dr. Jennifer Forsyth, the medical examiner at the Arkansas State Crime Laboratory, testified that she reviewed Mr. Walker's case. She stated that it was determined that Mr. Walker died from blunt-force trauma to the back of his head and that it created swelling in the brain. On cross-examination, Dr. Forsyth explained that the blunt-force-trauma wound was consistent with falling and hitting one's head on the ground.

Appellant testified on his own behalf. He explained that fighting was normal in prison and that he did not intend to knock Mr. Walker down. He testified that he remembered going to the bathroom area before the incident, and he admitted getting into a verbal altercation with Mr. Walker. Although appellant testified that he was told he hit Mr. Walker and did not deny doing so, he stated that he had no independent recollection of hitting Mr. Walker. Instead, he claimed that Mr. Walker must have said something that made him angry, which caused him to have a "blackout" about the event.

The jury found appellant guilty, and he was sentenced as a habitual offender to serve a total of 240 months' imprisonment. This appeal followed.

## II. *Motion for Directed Verdict*

Appellant specifically argues on appeal that the trial court erred in denying his motion for directed verdict because the State failed to prove the requisite mental state of "recklessness" required for the offense of manslaughter. A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Starling v. State*, 2016 Ark. 20, 480 S.W.3d 158. On appeal from a denial of a motion for a directed verdict, the sufficiency of the evidence is tested to determine whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* In determining whether there is substantial evidence to support

3

the verdict, this court reviews the evidence in the light most favorable to the State and considers only that evidence which supports the verdict. *Id.* Substantial evidence is that evidence which is of sufficient force and character to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.*

Before addressing the merits of appellant's argument, we must first determine whether his argument regarding whether the State proved recklessness is preserved. Rule 33.1 of the Arkansas Rules of Criminal Procedure (2019) provides the following in relevant part:

> (a) In a jury trial, if a motion for directed verdict is to be made, it shall be made at the close of the evidence offered by the prosecution and at the close of all of the evidence. A motion for directed verdict shall state the specific grounds therefor.
>
> . . . .
>
> (c) The failure of a defendant to challenge the sufficiency of the evidence at the times and in the manner required in subsections (a) and (b) above will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the verdict or judgment. A motion for directed verdict or for dismissal based on insufficiency of the evidence must specify the respect in which the evidence is deficient. A motion merely stating that the evidence is insufficient does not preserve for appeal issues relating to a specific deficiency such as insufficient proof on the elements of the offense. A renewal at the close of all of the evidence of a previous motion for directed verdict or for dismissal preserves the issue of insufficient evidence for appeal. If for any reason a motion or a renewed motion at the close of all of the evidence for directed verdict or for dismissal is not ruled upon, it is deemed denied for purposes of obtaining appellate review on the question of the sufficiency of the evidence.

At the end of the prosecution's case, appellant specifically argued two grounds in his motion for directed verdict: (1) there was a lack of any testimony that he did anything reckless; and (2) no witness made an in-court identification that he was the individual that struck the victim. At the close of all the evidence, appellant stated, "I would renew my

4

motion for a directed verdict for lack of identification of this person." Because appellant did not specifically renew or otherwise incorporate by reference his previous argument regarding recklessness in the above-quoted language at the close of all evidence, the State contends that appellant's argument made on appeal is not preserved. We agree. In *Bowman v. State*, we explained that when an appellant makes a second motion for directed verdict, he or she must either generally renew or otherwise incorporate by reference the arguments made in his or her first motion for directed verdict to comply with Rule 33.1 of the Arkansas Rules of Criminal Procedure. 2019 Ark. App. 240, 574 S.W.3d 235. Accordingly, appellant's recklessness argument is not preserved for this court's review, and we affirm appellant's conviction.[1]

Affirmed.

GLADWIN and HARRISON, JJ., agree.

*Potts Law Office*, by: *Gary W. Potts*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

---

[1] Moreover, we cannot address the identification issue argued below because appellant abandoned that argument when he chose not to make it on appeal. *See Mercouri v. State*, 2016 Ark. 37, 480 S.W.3d 864.